**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| JOHN SMITH,<br>   Plaintiff,<br> vs.<br>PROVIDENCE COLLEGE,<br>   Defendant. | Case No.: 1:22-cv-269<br><br>JURY TRIAL DEMANDED |

**VERIFIED COMPLAINT**

This civil action arises from a physical altercation that took place on the campus of Providence College on April 9, 2022, between certain freshman and junior year students. Plaintiff John Smith's[1] role in that altercation was limited to discouraging others from joining in. He nonetheless was adjudicated in an irregular, joint disciplinary proceeding and is now on suspension with no right to attend class anywhere. Unable to secure the rights and process he bargained for, John Smith alleges as follows:

**NATURE OF THE ACTION**

1. This is a civil action whereby John Smith, a student plaintiff, seeks injunctive relief against Providence College, the higher education institution he attends.

2. At issue is an education contract with clearly delineated rights and procedures that Providence College failed to respect and follow.

3. Providence College has suspended John, derailed his education, tarnished his reputation, damaged his career and educational prospects, and refuses to permit him to attend class at any institution while its arbitrary sanction is pending.

---

[1] A motion to proceed pseudonymously is being filed herewith. Defendant is aware of the identity of the Plaintiff, and of the other students referenced herein.

## PARTIES AND PROTAGONISTS

4. Plaintiff John Smith ("John") is a resident of Massachusetts. At the time of these events, he was a freshman at Providence College on full-time status.

5. Defendant Providence College (the "College") is a private higher education institution in Providence, Rhode Island.

6. "Freshman 1" is a non-party to this action. He is a first-year student at the College who was involved in the April 9, 2022 altercation.

7. "Freshman 2" is a non-party to this action. He is a first-year student at the College who was involved in the April 9, 2022 altercation.

8. "Junior 1" is a non-party to this action. He is a third-year student at the College and was the complaining witness following the April 9, 2022 altercation.

9. "Junior 2" is a non-party to this action. He is a third-year student at the College who was present at the April 9, 2022 altercation.

10. "Witness A" is a non-party to this action. She is a student at the College and was a passerby during the April 9, 2022 altercation.

## JURISDICTION AND VENUE

11. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because John and the College are citizens of different states and the amount in controversy exceeds $75,000.

12. This Court has personal jurisdiction over the College on the grounds that it is a citizen of the State of Rhode Island.

13. Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTS

14. In the fall of 2020, John Smith, then a senior at Thayer Academy, one of the top preparatory schools in New England, began applying for admission to college.

15. John had strong academics, good moral character, and a pristine disciplinary record – never having been in a single physical altercation in his lifetime.

16. Providence College was John's first choice for college as it is a relatively small school close to his home that combined a strong liberal arts curriculum with a well-respected business program.

17. In December of 2020, Providence College offered John admission to the Class of 2025 based on, among other things, his outstanding academic record and participation in extracurricular activities.

18. John accepted the College's offer with the goal of obtaining a quality liberal arts education and a degree in marketing.

19. To date, John has expended more than $75,000 in tuition, room and board, and other expenses.

20. During his freshman year, John devoted hundreds of hours to his studies, formed important friendships, participated in extracurricular activities, and was in good academic standing.

21. John's future at the College and in his chosen field appeared promising, and he aspired to continue on to business school after graduation to earn an MBA.

22. Unfortunately, the College grossly mishandled an intervening event in which John was little more than a spectator.

### *The Altercation at McCarthy Hall*

23. On April 9, 2022, at 2:04 a.m., John Smith and two friends, Freshman 1 and Freshman 2, were exiting the McCarthy Hall dormitory at Providence College where they had been socializing.

24. On their way out, the three freshmen encountered two individuals they did not know, Junior 1 and Junior 2.

25. All of the men had been drinking, and Junior 1 was urinating on the building.

26. The two juniors – who were bigger and older than the freshmen – began tossing insults and generally attempting to provoke their younger schoolmates.

27. John, Freshman 1, and Freshman 2 initially ignored the insults, until one of the provocations stirred Freshman 1 to turn and face his tormentors.

28. Freshman 1 walked back toward the older students and a confrontation began.

29. Junior 1 initiated physical contact by pushing Freshman 1, who pushed Junior 1 back, and in short order, the two men were rolling on the ground exchanging blows.

30. Junior 2 rushed to join the ruckus, but in an effort to deescalate the situation, John tried to restrain him.

31. John made no contact with Junior 1 at all.

32. The altercation lasted only a few minutes, and then the students parted ways.

### *The Report and Investigation*

33. On April 10, 2022, Junior 1 walked into the Public Safety Office at Providence College and stated that he wanted to report an assault.

34. Junior 1 claimed that the altercation was a homophobic attack spurred by the hearts on his shoes.

35. Junior 1 claimed that he began throwing up shortly after exiting McCarthy Hall, accompanied by Junior 2. Shortly thereafter, he was ridiculed by three unknown male students, one of whom tackled him to the ground.

36. Public Safety reviewed videos from McCarthy Hall and identified all three freshmen as suspects due to the fact that they exited McCarthy Hall shortly after the juniors.

37. Public Safety then interviewed Junior 2, Witness A, and all three freshmen.

38. No witnesses except Witness A alleged that John interacted with anyone but Junior 2.

39. Witness A, who was a passerby, is the only person who claimed John participated in the punching and kicking of Junior 1.

40. Junior 2 reversed the roles of his interaction with John and claimed that he held John back, not the other way around.

41. After the investigation was complete, the College charged all three freshmen with the same violations of the Code of Student Conduct.

42. In an April 27, 2022 email, Martin Connell, Providence College's Director of Community Standards, informed John and his friends of the following disciplinary charges:

> 4a. Underage possession or consumption of alcohol anywhere on College property, at College-sponsored events, student organization/club/team events, or off-campus establishments.
>
> 4f. Intoxication, regardless of age, in public or private.
>
> 11a. Non-sexual physical abuse or assault.
>
> 11b. Verbal abuse.
>
> 11c. Any conduct that creates an intimidating, hostile or offensive campus, education or working environment for another person or group of persons.
>
> 11n. Unauthorized physical conduct.

### *Breach of Confidentiality*

43. Mr. Connell's April 27, 2022 email informed the three freshmen, "we intend to administer a joint hearing for this group of students . . . To participate in the joint hearing, we will ask you to sign a waiver that will be sent to you by email."

44. On May 3, 2022, Mr. Connell met with all three freshman together. During that meeting, he again announced that the hearing would be a joint hearing and asked if the men were fine with that. In each other's presence and unaware of other options, no one objected.

45. Mr. Connell did not discuss confidentiality at the May 3, 2022 meeting, nor did he present the students a waiver of confidentiality.

46. John neither received nor signed any such waiver of confidentiality.

47. No one in the College's disciplinary system or administration ever met with John about the proceeding outside of the presence of his two friends.

48. Had John known he actually had a choice or that suspension was on the table, John would have declined a joint hearing because it was not in his interest as his involvement in the altercation was marginal.

### *Witness Disclosures and Guidance*

49. On May 3, 2022, the College sent all three charged students a link to the hearing case file.

50. The case file contained witness statements from each of the three freshman students, from the two juniors, and from Witness A.

51. The same day, Mr. Connell invited the freshmen to propose questions for the witnesses either prior to the hearing or while the hearing was live.

52. Neither the case file nor Mr. Connell's communications contained a list of witnesses who would be present at the hearing, thereby implying that all would be present.

53. Mr. Connell discouraged the three freshmen from selecting advisors to assist them in the disciplinary process by telling them that advisors could only provide "emotional support;" he neglected to mention that they could also "ask for procedural clarifications."

54. Mr. Connell told the charged students that the purpose of the process was educational, not punitive.

55. Based on Mr. Connell's statements, John incorrectly believed that any sanction would be educational in nature and not in the form of suspension or expulsion.

56. Based on Mr. Connell's statements, John did not tell his family about the upcoming hearing and, like his two friends, declined the assistance of an advisor.

### *The Hearing*

57. The College held the joint disciplinary hearing for the three freshmen on May 5, 2022, before a panel of three hearing officers (the "Hearing Board").

58. At the outset of the hearing, John accepted responsibility for violation of sections 4a (underage consumption of alcohol), 4f (intoxication), and 11b (verbal abuse) of the Code of Student Conduct, but denied responsibility for violation of sections 11a (non-sexual abuse or assault), 11c (conduct that creates an intimidating, hostile, or offensive campus environment) and 11n (unauthorized physical conduct).

59. All three of the charged freshmen students attended the hearing, made statements and answered questions about the events of April 9, 2022.

60. Junior 1 and Witness A also attended the hearing and offered their versions of the events.

61. To John's surprise, Junior 2 did not attend the hearing and was not subject to questioning.

62. When asked about Junior 2's absence, Mr. Connell responded that the College could not compel him to appear. This statement conflicts with the *Student Handbook*, which states that "the Director of Community Standards, or designee, will determine which witnesses shall be compelled to appear and failure to appear may result in a disciplinary charge."

63. Junior 2's testimony was crucial to determining John's responsibility because by all accounts, save that of Witness A, he was the only one John had contact with.

64. All three of the charged students, including Freshman 1, agreed that it was only Freshman 1 who fought with Junior 1 and that John never kicked or hit Junior 1.

65. Junior 1 acknowledged that he had yelled insults at John and his friends and had pushed Freshman 1 before the fight began, but did not know whether anyone other than Freshman 1 had kicked or hit him.

66. Witness A's testimony differed significantly from her prior account to Public Safety.

67. Witness A had told Public Safety that she first saw and spoke to Junior 1 and Junior 2 before the fight when she went out for pizza, but at the hearing, Witness A recanted that claim.

68. Witness A had told Public Safety that she was close enough to be in danger during the fight, but at the hearing, Witness A agreed that this was not the case.

69. Witness A is the only witness who testified that she specifically saw each of the three freshmen hit and kick Junior 1.

70. Witness A acknowledged that she and Junior 1 had been best friends since their freshman year. Nonetheless, on the basis of her testimony alone, the Hearing Board found John equally responsible with his two friends for all of the alleged violations.

71. In communicating its findings, the Hearing Board cited Witness A's testimony alone as its basis for finding John responsible.

72. Based on the Board's findings, the College sanctioned all three freshmen in like manner: a one-year suspension, completion of an anger management program, a letter of apology, payment of a fine, and completion of an alcohol screening and intervention program.

73. During the pendency of the foregoing sanction, the College has advised that it would not recognize or accept credits for course work that John may complete at any other college or university.

74. John appealed the Board's findings on multiple bases, including procedural defects and the inordinate sanction, but the College summarily denied the appeal without comment.

## COUNT 1
### *Breach of Contract*

75. John re-avers paragraphs 1-74 as if fully set forth in this count.

76. As part of its admissions packet, and again with the April disciplinary notice, the College provided John with copies of its school policies, including the *Student Handbook 2021-22*, a copy of which is attached hereto as <u>Exhibit A</u>.

77. As an enrolled member of the College community, the *Student Handbook* affords John certain rights that are contractual in nature.

78. John reasonably expected that the College and he were equally bound by the *Student Handbook*.

79. The *Student Handbook* gave John and his friends "the right to confidentiality, with disclosures made on a need-to-know basis only," and the right to individual disciplinary hearings unless they "voluntarily waive[d] their right to confidentiality."

80. The College breached John's confidentiality by never discussing the disciplinary proceeding with him alone and apart from his friends, by soliciting his consent to a joint hearing

in the presence of his friends, and by conducting a joint disciplinary hearing without first obtaining a signed waiver of confidentiality.

81. The *Student Handbook* gave John "the right to receive assistance from an advisor" who "may ask for procedural clarifications before, during, or after meetings or proceedings . . . ."

82. The College breached John's right to receive assistance from an advisor by soliciting his consent to a joint hearing before advising him of his right to an advisor, by downplaying the value and role of an advisor, and misrepresenting the nature of the hearing to be held.

83. The *Student Handbook* gave John "the right to a fair opportunity to provide relevant information via statements, documents, and witnesses."

84. The College breached John's right to present relevant information and witnesses by failing to procure the presence of Junior 2 at the hearing, who was the only individual at the altercation with whom John had contact. Upon information and belief, this breach was due to Mr. Connell's erroneous understanding of his actual authority to compel Junior 2's presence.

85. The *Student Handbook* provided that at hearings, witnesses would "provide information directly to and answer questions from" the Hearing Board, and respondents would be permitted to suggest questions for the complainant or for other witnesses.

86. The College breached John's right to present questions for witnesses by failing to follow its own procedures and procure Junior 2's presence at the hearing, with the result that he was not subject to questioning by the Hearing Board or by John.

87. The *Student Handbook* gave John "the right to receive notice of the charges and an explanation of the grievance process . . . the right to have access to relevant information [and] a reasonable time frame to prepare for a proceeding."

88. The College breached John's right to notice and reasonable time by leading him to believe that he would be able to pose questions to Junior 2 at the hearing when that, in fact, was not the case.

89. The *Student Handbook* gave John "the right to a reasonable and fair outcome, applying the preponderance of evidence standard of proof."

90. The College breached John's right to a fair outcome by failing to produce the only individual with whom he had contact during the altercation and unfairly narrowing the evidence the Board had to consider.

91. Finally, the *Student Handbook* gave John the right to a "fundamentally fair" sanction.

92. The College breached John's right to fundamental fairness by sanctioning him no less severely than the student who admittedly punched Junior 1.

93. As a direct and proximate result of the foregoing, John suffered the derailment of his college education, a tarnished reputation, damaged career and educational prospects, and a significant loss of time.

## COUNT II
### *Breach of Covenant of Good Faith and Fair Dealing*

94. John re-avers paragraphs 1- 93 as if fully set forth in this count.

95. Every Rhode Island contract contains within it an implied covenant of good faith and fair dealing.

96. The College breached that covenant by depriving John of a fair proceeding.

97. As a direct and proximate result of the foregoing, John suffered the derailment of his college education, a tarnished reputation, damaged career and educational prospects, and a significant loss of time.

## COUNT III
### *Injunctive Relief*

98.     John re-avers paragraphs 1-97 as if fully set forth in this count.

99.     John has a reasonable likelihood of success in demonstrating the College's breach of contract insofar as its decision to ignore John's right to confidentiality was capricious and arbitrary; the decision to suspend John is based on an irregular, joint disciplinary hearing; the failure to procure Junior 2 as a witness was based on Mr. Connell's mistaken belief that he had no power to do so; and the decision to sanction all three freshmen in like manner regardless of their actions was fundamentally unfair and contrary to John's reasonable expectations.

100.    As a direct and proximate result of the foregoing, John faces imminent irreparable harm to his reputation, education and professional goals for which no adequate legal remedy exists. Such harm includes the significant loss of time and disruption to his ability to pursue his academic program in an ordinary and timely manner, the loss of internships and educational opportunities, the delay of John's graduation and professional career, the inevitable necessity to explain for the remainder of his professional life the significant gap in his college career, and the reputational harm that will flow from disclosure of the fact that the educational gap was due to an erroneous finding that John participated in the beating of a fellow student based on that student's sexual orientation. The significant gap in his studies will also impact John's course work, including the College's rigorous two-year Western Civilization curriculum that spans students' freshman and sophomore years.

101.    As a direct and proximate result of the foregoing, John has also suffered severe mental trauma. John had a history of anxiety as a child and present circumstances have triggered a recurrence. He vomited upon learning of his suspension, and in the days and weeks intervening, he has struggled to maintain his appetite, has lost weight, and has lost interest in his normal activities.

102. The balance of equities tilts to John because the College will suffer no damage if injunctive relief is granted, the public interest favors the upholding contractual rights, and John Smith does not seek to avoid discipline, but rather obtain a process consistent with his contractual rights.

103. In the absence of injunctive relief, the College intends to immediately alter the last peaceable status prior to this controversy between itself and John by banishing John from campus.

## PRAYER FOR RELIEF

Upon the foregoing, Plaintiff John Smith respectfully prays that this Honorable Court:

a. Enter an injunction restraining and enjoining Defendant Providence College from suspending him or enforcing other sanctions imposed as a result of the irregular and unfair May 5, 2022 hearing, and order a new disciplinary proceeding in strict accordance with his contractual rights under the *Student Handbook*, including but not limited to an individual hearing at which Junior 2 appears as a witness subject to questioning;

b. Award him the reasonable costs of this action, including attorneys' fees; and

c. Enter all such further relief as this Court deems equitable and just.

## JURY DEMAND

The Plaintiff, John Smith, demands a trial by jury on all issues so triable.

The undersigned hereby swears under pains and penalties of perjury that the facts stated herein are true and accurate to the best of his knowledge.



COMMONWEALTH OF MASSACHUSETTS
COUNTY OF PLYMOUTH

Subscribed and sworn to before me in ___person___, on July 18th, 2022.

Notary Public

My Commission Expires: 2/5/2027

Dated: July 18, 2022

The Plaintiff, John Smith,
By his Attorneys,

/s/ J. Richard Ratcliffe
_____
J. Richard Ratcliffe, #2603
Jeffrey Biolchini, #7320
Ratcliffe Harten Galamaga, LLP
40 Westminster Street, Suite 700
Providence, R.I. 02903
Tel: (401) 331-3400
Fax: (401) 331-3440
rratcliffe@rhgllp.com
jbiolchini@rhgllp.com

/s/ Ruth O'Meara-Costello
_____
Ruth O'Meara-Costello - *pro hac vice pending*
Massachusetts BBO #667566
Zalkind Duncan & Bernstein LLP
65A Atlantic Ave.
Boston, MA 02110
Tel: (617) 742-6020
rcostello@zalkindlaw.com